May 19th, 2014 8 a.m. Safe House, Kingsville, TN Our second case is 25-2037 Ramos v. Blanche. Mr. Winograd? Thank you, Chief Judge Diaz, and may it please the Court. The primary question in this case is whether the crime of embezzlement in Virginia categorically involves fraud or deceit. The Court should hold that it does not. As the Supreme Court made clear in Kawashima, a crime does not involve fraud or deceit simply because it is dishonest from an ethical standpoint. It involves fraud or deceit only if it requires the offender to engage in some type of misrepresentation, and Virginia's embezzlement statute contains no such requirement. The Virginia Supreme Court has held that embezzlement requires an intent to deprive, not an intent to deceive. That's why people are routinely convicted of embezzlement for engaging in garden-variety theft from their employer. And that's also why the Virginia Court of Appeals just last month upheld the conviction of a business owner for failing to remit tax money that he owed to the county. And because people can be convicted of embezzlement without engaging in any misrepresentation, it does not categorically involve fraud or deceit. Can I just ask you something that's rounder? This is about the facts. This is not about this. What is the practical effect of the fact that USCIS has now approved his family-based visa petition? I saw that and I was confused and I don't know what to do with that piece of information. What does that mean? It means that if he was still in removal proceedings, he would be eligible to apply for adjustment of status. But given that he's now under a final order of removal, it would make no difference unless the case is remanded. Can I also ask another procedural question? He was a lawful permanent resident when removal proceedings were initiated, right? So why was there a requirement to apply it again for LPR status if he was already had that status? Adjustment of status is a form of relief from removal. That's just how it's developed over the decades, that in order to avoid the effect of the finding of removability, he would have to readjust status and become an LPR once again. To start the process all over again, essentially. Essentially, yes. Okay. Can I ask you then, you started off with this notion that the Virginia statute here is not categorically a crime of fraud. So is our decision in the United States be good in footnote 5 where we essentially say that under Virginia law, embezzlement is also Well, the government argued in that case that embezzlement is also theft, but we said that they are separate as a matter of categorical distinction. Is that just wrong? I'm sorry, in good? Yes, good. Or circuit. Yes. Theft and fraud are certainly distinct. The part of good that the government relies on is the statement that, which we believe is dicta, that embezzlement involves dishonesty, fraud, and misrepresentation. Now, I'm not sure if that's what your honor is referring to. Let's assume I'm asking you about that language, because I would like to know about that language. So we think that is a quintessential example of dicta. It did not address the precise question at issue in this case. It wasn't necessary to the outcome. It easily could have been deleted without impairing the analytical foundations of the whole thing. In fact, if the court simply redlines the statement that the government is relying on, followed by the word indeed in the next sentence, it literally makes no difference to the outcome of the decision. And I would also note the sentence after the one on which the government relies is far more equivocal than the government suggests. It says that if the statement on the application was phrased in using the word involving, that it might well have been false. That's not even saying it would be false. But even in a world where that statement is regarded as a holding, we would argue that it cannot be reconciled with the Supreme Court's intervening decision in Kawashima, which made clear that a crime that can be committed without making a misrepresentation does not involve fraud or deceit. So can I ask you about... Yes. I think I know your answer, but I just want to make sure I do. So this statute, among other things, has the word fraudulently in it. And is your argument essentially like... I mean, this is the weird thing about an eerie world. We live in a world of eerie railroads. So under eerie railroads, state law means literally whatever the state's Supreme Court says that it means. And you might say, like, if this was our federal statute, you might think that it requires, well, fraud or something fraud-like. But the Supreme Court of Virginia or Virginia's courts, you marshal these historical sources in your brief, has said, notwithstanding what you might think, person living in 2026, the word fraudulently does not necessarily mean what you might be inclined to assume the word fraudulently means. That's basically... Correct. And that because we live in an eerie world, if that's what the Virginia Supreme Court says, then that's just what this law means. That's basically your argument there? Yes. We think both as a matter of original intent of the Virginia legislature. But... But who cares? I mean, because from my perspective, I don't care what the legislature of Virginia meant. I care what the Supreme Court of Virginia says Virginia law means. And the Supreme Court of Virginia has never interpreted the term fraudulently in the embezzlement statute to require any misrepresentation. It is interpreted to require the same intent that is required to commit larceny, which is knowingly depriving the victim of property without any bona fide basis. Okay. So like larceny would be, I walk into a convenience store and while the teller is not looking, I grab a candy bar and walk out. I don't lie to the teller. I don't have a confederate who says, hey, distract the teller. I just rely on the fact that the teller is not looking at the moment and I grab it and I walk out. I've definitely committed larceny. And I've definitely had a culpable mental state, but I haven't deceived, the idea there is I haven't deceived anyone. Correct. And this court has made clear in Solomon and Manna that for that very reason, embezzlement does not qualify as a theft offense. But the point is, nor does it qualify as fraud because fraud requires under Kawashima some type of misrepresentation. Even in the employer-employee context where at least there's some implicit notion that when you take on work as an employer, you're not going to steal from your boss? Even if there's a societal implication that you do that, the difference between embezzlement and fraud is that in fraud, the intent to deceive has to exist at the time the statement is made. In embezzlement, a person can take a job without having any intent to later convert property that is entrusted or delivered to him by virtue of his position. That intent, the intent in embezzlement arises after, at the time of the misappropriation, not at the time that they either receive the property or at the time that they receive the position that allows them to do that. But even putting the employment context aside, just look at Peary, the most recent decision from the Virginia Court of Appeals. The defendant was convicted of nothing more than failing to remit taxes to the county that he had collected on their behalf from his customers. He didn't lie about how much he owed. He didn't otherwise try to mislead the county. He just failed to pay taxes that he knew he had to pay. Presumably that individual submitted a tax return, right? He submitted tax reports, yes, which by all accounts were accurate. They were late. But he wasn't convicted. I guess what I'm saying is when I submit my taxes, I disclose the income I disclose, at least depending on how the language of the tax form runs. When I submit my tax form, I also represent, and I don't have any other income that's not listed on this form, right? I presume the forms that I submit say something like that, right? Not just this is my income, but this is my only— I love that you have to presume what the tax form says. Maybe read it next year. But it says, right, I'm not just representing that I made the money that's on my tax form. I'm also representing that I didn't make money that's not on my tax form. Certainly, but I think Peary is on all fours with the hypothetical in Kawashima. Again, the hypothetical in Kawashima was a taxpayer who files an accurate return but moves his money beyond the reach of the IRS. And the Supreme Court very clearly said that does not involve fraud or deceit. It's a little different though, right? I mean, it might be helpful to you, but it's not the same because it's a scenario where, as I understand the most recent Supreme Court case, they're like a business and they are collecting effectively like sales tax that is the government's, right? This isn't like, you know, Judge Hyten's paying his taxes as a percentage of his income. They're getting this money effectively as like a, you know, bailee, right? I mean, it's not—it's in no sense their money. It's not their money when they collect it. It's not their money when they don't give it. So it's not like the tax case in Kawashima, right? I mean, it—because actually in that instance, you don't—it wasn't the government's money to begin with. That's a distinction. We don't think it's a material distinction. The analogy we're trying to draw is that the hypothetical taxpayer in Kawashima and Peary, and in Peary, no misrepresentation was required. If you just modify the facts of Peary to say that he filed his tax forms on time and completely accurate—and they were completely accurate, but he nonetheless refused to pay the taxes for whatever reason, he would still be guilty of embezzlement. I don't think there's any dispute about that. And he would be guilty of embezzlement notwithstanding the fact that he was otherwise completely accurate in disclosing the amount of taxes that he owed. That's the point that we're trying—the analogy we're trying to draw between Kawashima and Peary. And to the extent that Good and, I guess, the other case is Wells that the board relied on say otherwise, that's just flat wrong as a matter of statutory interpretation? Yeah, so—well, I discussed Good, but in terms of Wells, yes, fraudulent intent as used in Wells is synonymous with felonious intent as is used in the context of larceny. I mean, Wells is a decision of the intermediate appellate court. I think the decisions of the Virginia Supreme Court are much clearer. So if you go back to Vaughan from 1920, it cited Wharton's treatise for the proposition that fraudulent and felonious were often used synonymously. In Page from 1927, the court said that fraudulent intent was synonymous with criminal intent. In Pierce from 1964, the court said that fraudulent intent was required for robbery, which by definition must be committed by force, not fraud. And then most importantly, in Bain from, I believe, 1974, the Virginia Supreme Court specifically said that the term fraudulently as used in the embezzlement statute was distinguishable from the civil definition of fraud precisely because it doesn't require any misrepresentation. So Bain especially makes clear that the term fraudulently as used in the statute and fraudulent intent as is often used in judicial opinions does not mean the intent to deceive. It's simply the intent to deprive without any bona fide basis, which again is the same test to determine whether someone had the animus ferundi for purposes of larceny. Can I ask, you keep using the word misrepresentation, and I just want to make sure I understand your argument. Do you think it's limited to misrepresentations, or could fraud or deceit include omissions of material facts? No, we don't dispute it could include omissions. You just kept saying misrepresentation. I just want to make sure that, fine, I'm not complaining about the way you're framing it, but can you just walk me through sort of just a minute on to I think what was the Chief's question in part, is this sort of omission that if somebody is giving you property, right, so if you're, you know, the rental car example, which seems to come up a lot, but the tax guy is the same way. If somebody's given you property that is not yours, that there is, I don't want to bastardize the Chief's comment, but there's this implicit, you know, statement or promise that you will use it in the manner in which it has been given to you, right? If I'm the valet and somebody hands me the keys, I don't go on a joyride from Ferris Bueller's Day Off, right? I go and park it in the, like, lot, right? And if I do something inconsistent with that, or if I'm going to do something, or I do something, there's an implicit representation that I'm not going to do that. And if I omit to tell them either at the time or when I develop that desire later, then that omission, the failure to notify the true owner of the property of my, you know, decision to misuse the property, whether it's at time zero or time one, that's an omission that is itself deceitful merely because, unlike the tax case, this is somebody else's property. Sure. I think you can only look at time zero at the point that the property is entrusted or delivered to you. So, yeah, I don't think so, right? Once you admit it's an omission, right, it's a failure to notify. Again, if it's just a misrepresentation, there's only one set of representations, and that was at time zero. But an omission is different. So a failure to notify, a failure to provide information is an omission, but it doesn't require that I'm speaking in order to do so. By omission, I mean, as this court put it in Solomon, the concealment of that which should have been disclosed. So right, and what should have been disclosed, this is the argument, right? What should have been disclosed is that even if I took the valet keys, took your car with the sterlingest of intents, the vintage Ferrari overcame my willpower 15 minutes later, and I was simply unable to comply, but that I have an obligation to notify the person who provided me that Ferrari, that my view has changed, and I'm now going to misuse their property. I just think that's conflating embezzlement and false pretenses, which are two separate crimes. No, but that's not, it's not conflating it, right? Because the question is whether there's a material omission, right? And if you have some obligation to, you know, do with somebody's property what they have defined it for you, right? Go park my car. If I change that, I have an obligation because it's their property. They own the property, unlike in Kawashima, where it wasn't the government's property. But when they own the property, that's part of the representation that you make at the beginning, and you have a continuing obligation to not omit a change in your intention. Right, I just think, think of it that way. I just think it transforms embezzlement into false pretenses in that it extends the moment where the property comes into possession for the entire time you have it in your possession. But false pretenses is limited to the very question of are you doing it at time zero, right? And we can all sort of acknowledge that even though there's false pretenses, embezzlement, and larceny, they're not siloed, right? There's going to be overlap. There's going to be instances in which they, a given crime could be charged in more than one way. At the state level, that's often the case, but this court has siloed theft and fraud. I think Solomon and Mina made clear that theft and fraud are mutually exclusive, or this court treats them as mutually exclusive for purposes of the INA, and I think embezzlement is different from both of them because it doesn't require a trespass in the taking for purposes of the INA. So in response to my argument, what you say is because that could be charged as false pretense, it could not be charged as embezzlement. That doesn't seem right. No, that's not what I'm saying. Then I'm not understanding. Give me one more time. I'm saying the way you are characterizing this continuing duty to disclose or not omit, I think just makes, would make embezzlement a form of false pretenses for the entire period that a person has the property in their possession. It's not just false pretenses. It's something different, right? I think what makes embezzlement different is that one does not have the intent to convert at the time they come into possession of the property, and because they don't have that intent at the time they come into possession, there is no duty to disclose at that time, and I don't think there is a continuing duty to disclose. It's sort of an omission of a pretty material fact, right? I mean, you think of deceit, take deceit as an example. It's an omission of a material fact. If I've taken your car under the implicit promise to park it, even if I intended that at the time, if I change my mind and I'm like, I'm joyriding this thing into the ground. But there's no longer even an opportunity to inform them. Today, sure. Today we have cell phones. You should go back to the restaurant and you should inform the patron that I'm getting ready to go take your car for a joyride so that you have the opportunity to revoke the limited license you gave me. Okay, well, I mean, that's a valet at a restaurant. If we have a valet at an airport and the person's flown to another city, there's no opportunity. Maybe today with cell phones, yes, but historically, there was never that opportunity. Greg, can I? I'm sorry to interrupt, but even if under Judge Richardson's hypothetical, Virginia might prosecute that as an embezzlement, the fact remains that they prosecute something less than that categorically, so it doesn't matter. If we look at the least culpable actions that could be prosecuted under this statute and the fact that it might also include all of the various hypotheticals that Judge Richardson just launched at you is not the question. I couldn't agree more. And yes, there may be many instances of embezzlement that do involve fraud or deceit, but categorically, they don't require it. Can I ask you two questions about this statute? Does this statute require a fiduciary relationship between the defendant and the victim? No. This court made that clear in open risk, citing Chiang, authored by Judge Keenan when she was on the Virginia Court of Appeals. And then the second question is, do you understand the federal statute as requiring fraudulent or deceitful? Is this a mens rea requirement or an actus reus requirement? Is the question whether the defendant had a fraudulent or deceitful intent, which would be a mens rea issue, or whether the defendant did something that is fraudulent or deceitful, which to me sounds like actus reus? At a minimum, it requires the actus reus of some type of misrepresentation. So the fact that I, in my heart, tend to do something super sneaky is not enough? I think the court can save that for another case. We haven't raised any argument related to a specific mens rea or materiality, but I think at a minimum, it requires an act of misrepresentation. And in Kawashima, for example, you filed out a tax return that said, this is everything I owned, but it's not everything you own. So when you filed out a tax return saying, this is everything I own. No, that's not what it was in Kawashima. Thank you. I realized as I was saying, it's like, I'm not sure I'm right about this, but I wasn't. No. Kawashima specifically referred to a taxpayer who filed an accurate return, but nonetheless moved his money beyond the reach of the IRS. No, no. So what Kawashima said about the reason that the people, that the primary defendant in Kawashima had in fact committed fraud or deceit. Oh, yes. Because you filed a tax return and said, this is everything I own, and it's not. I don't know the exact facts, but the return had materially false information. The information was not true. Right. And the court emphasized that it involved fraud or deceit, precise or deceit, not fraud, precisely because the return included materially false information. Can I ask one follow-up to the Chief's question? Sorry, Chief. Go ahead. So the Chief says, okay, but these crazy hypotheticals that Judge Richardson ... I agree between the lines. These ideas, but there's something less. And so I guess what I'm trying to understand, or there's something that would be prosecuted that doesn't involve this idea that I was trying to get at. And I guess I'm curious, you sort of agreed with it, but didn't explain why. Because as I understand embezzlement, it has to ... The least culpable piece of this is that it involves property that was delivered by another. It could be entrusted, but we sort of acknowledge that's probably more, an easier example in your mind. And then we talk about this employment as the third example. It's got to be one of the three. It's got to be employment, right? Some version of that. Or by virtue of trust, office trust employment, or which shall have been delivered to him by another. That seems to be the least culpable piece. Do you agree with that part? I think so. So can I give you a hypo? What if someone ... Go ahead. No, no, go ahead. What if I get at my house a check that was intended for the previous owner of my house, and it's mailed to me at my house? I didn't ask for it. I didn't invite it. I have no relationship whatsoever with the entity that sent me the check, and I cash it. For reasons I don't quite understand, my bank lets me cash that check. Have I engaged in fraudulent or deceitful conduct there? Have I committed embezzlement in violation of Virginia law? I think I probably have. I think you have. I think you would necessarily engage in fraudulent or deceitful conduct by cashing a check. Yeah. Okay. That's a bad example. What if I just keep it? What if someone just mailed something to me that they clearly didn't intend to mail to me, and I just keep it? Pretend it's cash? No, or chocolates, and I eat them. It was delivered to me by another. I suppose, yes, that could be embezzlement. Now, there may be an abandonment claim or something like that. Oh, I know it was addressed to someone who wasn't me.  Then, yes, I think that would qualify as embezzlement under Virginia case law. I believe it would. I'm good. Thank you very much. Thank you, Your Honor. Ms. Gordon. Thank you. May it please the Court, I'm Virginia Gordon for the respondent. Your Honors, as my colleague said, the primary question is whether this categorically involves fraudulent or deceitful conduct, and the embezzlement does, yes. May I ask you a threshold question here? Why was he removed before there was a final order of removal? There appears to have been an error. That sounds like a really, really, really big screw-up, removing someone who doesn't have a final order of removal. Yes, Your Honor, and he was brought back because of that error once it was made evident to our office. Have steps been taken to figure out why that happened and ensure it's not going to happen again? Yes, we constantly do make steps to make sure that those things don't happen again. I know that my colleague who was working on the case had multiple conversations with the Department of Homeland Security. He was brought back because of that, and from our understanding, in the same position before leaving, that departure does not affect his status. Unfortunately, the conviction that he faced does affect his LPR status. We do believe that embezzlement under Virginia law meets the definition of fraud or deceit under A43M Romanet I because that is a broad statute, as the Supreme Court had stated, and when we're looking at involving fraudulent or deceitful conduct, everything that even was raised today for embezzlement involves fraudulent or deceitful conduct. What about my chocolates hypo? That could be considered deceitful conduct because it's concealment. I have not said anything to anyone. But there is a concealment, and that's the part that my colleague hasn't... By eating the chocolates? You've concealed... I would argue that you concealed that you know the chocolates don't belong to you, and they belong to someone else. Let me change the hypo. The hypo is now a pretty little clock, and I put the pretty little clock on my mantle. I don't consume the clock. I don't destroy the clock. If anyone ever asked me, I said it was a bizarre thing. One day, someone mailed me this clock, and I'm not hiding it for anyone. It's literally on my mantle in my living room. I don't think that that would be convicted as embezzlement, but it just doesn't seem...  I'm looking at the statute. That seems to violate the statute. The statute requires that it can be either wrongfully or fraudulently using, disposing, concealing, or embezzling this tangible and tangible property of another. I'm using it. Yes. Did you receive it for the another, or by virtue of your office, trust, or employment, that you were... It was delivered to me. By a company. It was sent to me by the clock company. The clock company sent it to me. Or UPS, or FedEx. And it was sent to your name, not the other person's. It was addressed to someone who's not me, that it was delivered to me. Right. So I think that's where the difference would be. I don't see the cases in Virginia law saying that because it was delivered... If it was delivered to me, but I didn't receive it. So it was mailed to me, but I never received it, then it never was delivered to me. But it was delivered to you, but you... I think I'm just turning the hypothetical in a bad way. I don't see embezzlement being charged for that situation. You would say that because it wasn't addressed to him, it wasn't delivered to him by another. That delivered to him... I don't know whether this is right or not, but like, that delivered to him doesn't include when something is lost, which is effectively if I mail it to Chief Judge Diaz, but I use Judge Hyten's address and Judge Hyten decides to keep it, seems like a likely scenario given his hypotheticals, that that is somehow me delivering it to Judge Hyten's, right? That's a mistake. That's not a delivery. That's not a delivery. And so when we look at the delivery example, the rental car example, with the friend who rented a car to bring her friend home from the hospital. Well, she delivered, she had a headache. So her friend said, can I use the car? I need to go get my medicine. She delivered it to her. It was a direct exchange. And then her friend decides to go take the car and cause damage and take it out of state. And that's a delivery. So I don't see the example of a mislabeled mailing or the post office inadvertently delivering to you. Who is the embezzlement of in the rental car example? Because the renter and then the joyrider and then the rental company, it was embezzled from the renter by the joyrider? That is, what it seems to be is that they, she was embezzling because she met the elements of this car was delivered to her. It was not her property. Technically, it was Enterprise's property that was in the trust of, through them. And what the... Am I understanding you to say that there needs to be a delivery of property of some kind to another? That can be. There are multiple ways it can be. So a delivery of property is one. There is a fiduciary relationship is one. The employer-employment relationship. So any of those three can do fit the embezzlement statute for Virginia. But we agree that the board of this case, no one is talking about the modified categorical approach in this case and whether this is divisible. So we have to assume the least culpable conduct that violates this statute. Right. And all of the examples that Mr. Winograd suggests in his brief, all appear to involve the employer-employee relationship. And you think that's perfectly, fits comfortably within the statute? Fits within the embezzlement statute, which then meets the INA's version, which is just involves fraudulent or deceitful conduct. And I know the issue of conduct was raised earlier. The involving the fraudulent or deceitful conduct, and we've spent a lot of time, and my colleague Mr. Winograd spends a lot of time talking about the fraudulent intent, but not the concealment. And Kawashima explains that deceit involves falsification, concealment, or cheating. So concealment is what we see in many of these Virginia cases. There's a concealment. An individual has an employer-employee relationship to manage their cash register properly, and yet they give false discounts to a customer, or give free items that they're not supposed to. They've concealed. There's concealment. But what about the employee who just raids the supply cabinet? What have they concealed? So if one of my law clerks just like literally goes into one of the supply doors and goes to town because they're having a party that weekend, and they don't want to buy supplies, what's the concealment? That's embezzlement, but I'm not sure what the concealment is there. I think we could say they've concealed or they have violated the trust. So they've concealed that. The way we're understanding the concealment, the way we're looking at it is that you've got the- That any violation of the fiduciary duty is necessarily concealment? No, not that. Because I think we'd have to look, I think in that case, you do have to see what happened in the case. But we know that it can be a violation of a fiduciary responsibility that can be taking money and converting it to something else. It can be concealing your, the, it would be concealing your, I think the best example I have is when we look at the scrap metal that was involved here. The individual, Mr. Ramos, concealed that this doesn't belong to him. He took the scrap metal that belonged to his employer- It's not really concealment, right? That's like a piece of it. It could be concealment, right? But really what it is is an omission of a material fact. And whether it's an omission depends in some degree, it seems like to me, for your argument on the existence of some relationship that makes that omission problematic. And an employee-employer relationship would be one of those. But the delivery of a vehicle to you would be another type of relationship that would warrant telling them if you've decided to go joyriding, right? And the same thing, if I use my valet example, I now have this obligation to notify you if I'm doing something different than what would have been understood at the time of the original transfer. Yes, your honor, I see it as that way. And if we were rating the supply closet, we're engaging in an act of omission. I should let you know, I really don't have money to buy... Oh, what if they're being extremely open and notorious? Like I walk out in the hallway and I see them doing it. It just seems to me that wouldn't end up being convicted under embezzlement. But I think what... Well, it seems to me like what you're really saying is that any crime that involves sneaky or dishonest intent is inherently dishonest or deceitful conduct. That seems like what your actual argument is. Okay, I apologize. So I think I should bring it back. Because actually, when we look at the categorical approach in this instance, because it's broad and it's involving fraudulent, deceitful conduct, all of the elements include that. And so we don't have to look at the facts. So how much does your argument depend on the fact that this statute uses the word fraudulently? It can be fraudulent or intentional. So fraudulently, the Virginia statute uses the word fraudulently because one of the ways that it can... But your friend on the other side says fraudulently as used in this statute doesn't mean fraudulently the way that people who live in 2026 understand that word. And we know that because of the common law that the Supreme Court of Virginia has said. And I don't really see a response to that in your brief. Right. As looking at the older cases, we've seen some development. And more currently, the Virginia courts are talking about fraudulently as a wrongful or fraudulent use. But wait, hold on. Like for me, the giveaway that something is deeply weird about how Virginia is using the word fraudulently is the case where they said that robbery involves fraud. It's like, no, it doesn't. Under no conceivable modern definition of fraud does robbery involve fraud. So that to me is a pretty strong clue that when we use fraudulently as a mens rea term in Virginia, we do not mean what we moderns think of by fraud. Because I don't see any modern definition in which robbery involves fraud. Yes, and I don't see that either. I think that case law has evolved. I don't think it's addressed that. So I can't say that the Virginia court has said we made a mistake. But the cases that are addressing this embezzlement statute, and we look at Wells, we look at these other cases, they talk about fraudulently. Sometimes they'll use wrongfully, fraudulently, or feloniously. So if felonious and fraudulent meant the same thing, we wouldn't need a disjunctive phrase of those three words. And we've got a fraudulent. There can be a fraudulent intent. Also, it can just be the receiving of the property. We don't have to have that intent. I'm sorry to interrupt you. Just a follow up to that. Does the fact that the Virginia court seemed to be all over the map on exactly how to interpret this statute, and of course, we've had this very spirited discussion as to where we should land. And I think Mr. Wintergrad mentioned this in his brief, although he didn't mention it when he came up to the podium. I think he talked about maybe applying the rule of lenity in a situation where a statute is ambiguous and suggesting there's just so much confusion here. In this case, that rule suggests that the petitioner should prevail given the ambiguity. I think that I want to clarify the ambiguity. I actually think when we got into the discussion and I went along with the facts that we really just want to come back to the categorical approach requires just looking at the elements. Do you think the rule of lenity has any role to play in that analysis? I don't think we do here because in this case, the categorical approach is pretty clear. We have the Supreme Court has... Is it really? Wow. Ooh, don't make that argument. Okay. There's never been a categorical approach case that's clear. Okay, I'll be fair. The categorical approach is tricky. We know that. But in this case, when we're looking at the categorical approach, we have two ways that you can look at it. And as Shuler, the Supreme Court said, when you look at the categorical approach in a case that's involved... With the phrase involving, like we have here involving fraud or deceit, it's a more broad... It's not an element by element comparison. So we're not looking for a specific defined element that has to be met from embezzlement. We just have to involve fraudulent or deceitful conduct. I thought your response to the chief might be that the rule of lenity simply doesn't apply in this context because there's not a criminal implication. So that's different in cases like Leocal where they're both immigration and criminal implications. But I thought what you might say is the rule of lenity should not apply in the context we have. And that is... Your Honor, thank you. That's helpful. It should not apply here simply because we... I don't think that it's as ambiguous as we've started to take it to with the hypothetical examples. And I did go down that road with you. What about the impact of Loper-Bright and the notion now that ambiguities in immigration statutes should be construed in non-citizens' favor? I think that if you find an ambiguity, then that's something to discuss. We don't see the ambiguity here because we see a categorical match because it's involving fraud or deceit. And the Supreme Court has, over time and this Court, defining those two different terms. We have fraud can involve that intent. Fraud might have... I'm sorry. The fraud that the courts have described for this, it does have an intentional perversion of the truth. But deceit has an act or practice of deceiving with a falsification, a concealment, or cheating. And so either one of those suffices to me... What's the falsification, lying, or cheating that I'm doing there? With taking a clock that was mailed to someone else, but you kept it. Again, I'm not lying to anyone about anything. Anyone who asks me about that clock, I will tell them the absolute truth about where that clock came from. I'm not concealing it because it's in the front room of my house. And literally anyone who comes into my house can see it. And I'm not... I don't know how it's cheating. I mean, we can describe a person who doesn't return something that they know was given to them by mistake as a variety of things. I just think it's weird to say that's cheating. I think it would also... It's doing something sneaky and maybe bad, but I don't think... It doesn't sound like cheating to me. And Your Honor, respectfully, I think that that would not be embezzlement under Virginia statute, even where they... Why? Because the delivery, as we discussed before, is not... And where does this idea that if you know you're not the intended... I don't see a single Virginia case that endorses this idea that if you know it wasn't supposed to go to you, it wasn't really delivered to you. Because I would think as a matter of plain English, something that is in my mailbox was delivered to me. And Your Honor, I respectfully just don't think that Virginia embezzlement would cover it. I understand that seeing it as delivery, it seems to me that would be covered under a different offense. I mean, there's some evidence that it's never been processed. I mean, we're not aware of any such instance in which Virginia is prosecuted as embezzlement. An instance when somebody received something addressed to a different person and they kept it. Right. But what we are seeing is that... And that's some evidence that Virginia doesn't interpret it that way. Right. The lack of that... And when we look at the types of cases Virginia has used the embezzlement statute for, they don't seem to go that far. They do seem to have... This delivery was a known relationship between the parties that delivered the item. Or again, we have the employment or the fiduciary relationship. Because of what we see the case is doing, it just seems that that hypothetical might go far. But I respectfully understand the delivery definition there could be confusing. But I think that when we just look back at the language, we involve fraudulent or deceitful conduct because either a fraud was committed, they engaged in an intentional perversion of the truth or they got someone to rely on something. But even the fraud definition that this court applied in Solomon says it could be or by concealing something that should have been disclosed. And so if we did say the clock, it should have been disclosed that you kept the clock because you knew it didn't belong to you. You could say that, but I don't see the cases going that far. But this court has given several disjunctives of what could be fraudulent conduct. And that even includes concealment of something that should have been disclosed. And then we have to see... So I wanted to ask you about the continuance issue, but if you have something you want to finish up on this, go. I don't want to get you off. No, just to reiterate that we see that this statute does mean it involves fraudulent or deceitful conduct. And I'm happy to talk about the continuance. Thank you, Your Honor. On the... I think I've traced or we've traced where I think this happened. But you agree that under the board's test, the question is good cause shown for a continuance. That's this test, right? Yes. And so your argument is that to the extent they said this stuff about full and fair hearing, that's just like harmless, erroneous stuff. But that's not the legal test, right? Wait, the good cause shown is the legal test. And then what the board has done is they look for good cause shown for denial of the continuance. And they're not going to overturn... Right. So the good cause shown is assessed at the time we're deciding whether to grant you a continuance. And so if that's the question, was good cause shown at the time, I don't understand how the fact that I later had a full and fair hearing has literally anything to do with whether there was good cause shown for having a continuance. So it seems to me like the board is like announcing different tests in the same opinion. The board did discuss it in their matter of present drawing. And so they cited that where they talked about it has to be the good cause shown. They follow the statute and then state, and we will not overturn the denial if good cause has been shown unless it appears they've been... So that's like a harmless error, like a prejudice requirement? It seems that what the board seems to be giving it sort of a prejudice requirement because they have said we're looking for good cause shown. And if we see that good cause has been shown, unless there has not been a full and fair hearing, we're not going to overturn the IJ's decision because it was that the IJ had all the information. And as long as they applied the primary and the germane secondary factors... Wait, I thought I was following you. Now I'm confused. Okay. So does full and fair come in after the board concludes there was good cause shown or in situations where the board concludes there wasn't good cause shown? That it appears that the board is applying it when they're looking at a denial of a continuance for good cause shown. So they... No, no, I literally don't know. So the board thinks... So does the board apply full and fair in situations where the board because all these cases are where the continuance was denied. That's the reason the non-citizen is appealing to the board. Right. So all of these cases involve cases where the IJ denied a continuance. Does the board apply, in your understanding, full and fair in situations where like, we actually think the IJ might've been wrong about denying the continuance because there was good cause, but we're not going to overturn the IJ's decision because you still had a full and fair hearing, which sounds like a prejudice requirement. Or alternatively... Yeah, does that help? That does help. I apologize. Thank you, Your Honor. If good cause... If the board believes that good cause were shown from what we have seen the board do, they would probably send it back to the IJ. And we're not going to see those. But if there's not... If there's been some harm from doing so, right? I mean, we let... Agencies are entitled to use harmless error just like we are. And a board doesn't need to address... We talked about Strickland earlier. I know this isn't your world, but you don't have to address the good cause piece if you find no prejudice, right? And so often it seems like to me, the board is saying here, there's no prejudice from the denial of the... And they're not using those words, but that's implicitly what they're doing. They don't have to do that before or after addressing whether there was good cause. They can simply say whether or not there was good cause. There's no harm in the denial. And Your Honor, that the board probably could do. But I do think the board looks for good cause shown first. And that's how they've been interpreting. If good cause was shown, then, and the IJ, and the board determines that the IJ erred on denying the continuance, then it's the way it has phrased it. It would likely remand for the IJ to address it. But because they won't return a denial of a continuance where good cause is shown unless there's a full and fair hearing. So unless for good cause shown, but they're looking to see was it shown? And usually it has not. When they found it and we get to this point, it's because the board said there was not good cause. And the IJ was correct in finding that. And I hope I'm clearly stating that. That we'd first look for good cause. If there was good cause and the IJ erred, then it would be remanded under how the board has been doing it. But generally we're seeing now the denial and they're agreeing good cause was not shown and we're not going to send it back. All right. Thank you, Ms. Gordon. Thank you for your time. Thank you, Your Honors. I would note that we have proposed a test for when a statute involves fraud or deceit. The government, neither in the briefs nor today, has proposed an actual test. Their brief is filled with all sorts of amorphous phrases like betrayal of trust, bad faith, breach of honesty, want of integrity. But any number of crimes involve such conduct without requiring any sort of misrepresentation. Stealing from your roommate unquestionably involves a betrayal of trust. So does adultery, for that matter. But a person who steals from their roommate, like a person who cheats on their spouse, can do so without making any misrepresentation. So the government's argument at bottom, I think, conflates crimes that are particularly dishonorable with crimes that are necessarily deceitful. Do you think that Virginia would prosecute those two examples as embezzlement, as under the statute? Those particular examples, no. Not embezzlement. But my point is, if you take the government's argument to its logical conclusion, it would seem to apply to the federal standard. Fraud or deceit would apply to crimes like adultery or, I mean, stealing from your roommate isn't a crime unto itself. But my point is, there are ways to commit crimes that violate a sense of loyalty or honor but don't require any sort of misrepresentation. And so if you take the government's, their test such as it is, it would, I think, expand it far beyond what Congress intended. Now, returning to the idea that we have this implicit duty not to steal from our employers, it's always implied that we're not going to steal from one another. That's why larceny is a crime involving moral turpitude. When I come into this courtroom, it's implied that I won't steal anything from it just by virtue of the fact that I'm a guest in this courthouse. With respect to Your Honor's question about concealment, concealment is not required. An employee could openly put their hand in the cash register and walk out of the store and commit embezzlement. You can think of it this way. Imagine there are two people at a store. One is a robber. One is the cashier. Both stick their hand in the cash register, take money out, and put it in their pocket. Neither one, that conduct is indistinguishable. Neither one engages in any misrepresentation. So neither we think would, and that would clearly be prosecutable as embezzlement under Virginia law. And if you look again at Peary, Peary didn't conceal anything. Sir, he was a little bit sketchy about when he was going to file the reports, but there's no indication in the decision that he lied about how much he owed. In fact, if anything, he overpaid how much he owed. The issue was simply that he did not pay money to the county that he knew, subjectively knew he had to pay and he had no bona fide reason not to pay. Therefore, he was guilty of embezzlement. On the rule of lenity, immigration does have a rule of lenity unto itself, even in cases other, you know, not just the Leocal context where there's a cross reference to a criminal statute. Before Chevron, the Supreme Court repeatedly applied the immigration rule of lenity. Under Chevron, it was unclear whether it still applied, but Postelope or Bright, Judge Sutton last year in a Sixth Circuit case that we cite in our brief, again, recognized that the INA has its own rule of lenity. So if there is a provision of the INA where the interpretations are in equipoise, then you have to interpret it in the non-citizen's favor just as you would in the criminal context. If the court has no further questions. Thank you very much, Mr. Wendegraff. We want to thank both counsel for their excellent arguments this morning. We'll come down and breach you, move on to our third and final case.
judges: Albert Diaz, Julius N. Richardson, Toby J. Heytens